UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHERYL CAFÉ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DUNKIN' BRANDS GROUP, INC., NIGEL TRAVIS, DAVID HOFFMANN, RAUL ALVAREZ, LINDA BOFF, IRENE CHANG BRITT, ANTHONY DINOVI, MICHAEL HINES, MARK NUNNELLY, CARL SPARKS, and ROLAND SMITH,<br><br>　　　　　Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Cheryl Café ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.　Plaintiff brings this action against Dunkin' Brands Group, Inc. ("Dunkin' Brands" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to

which Dunkin' Brands will be acquired by Inspire Brands, Inc. ("Inspire") through its wholly-owned subsidiary Vale Merger Sub, Inc. ("Purchaser") (the "Proposed Transaction").

2. On October 30, 2020, Dunkin' Brands and Inspire issued a joint press release announcing that they had entered into an Agreement and Plan of Merger (the "Merger Agreement") dated October 30, 2020 to sell Dunkin' Brands to Inspire. Under the terms of the Merger Agreement, Inspire will acquire all outstanding shares of Dunkin' Brands for $106.50 in cash per share of Dunkin' Brands common stock (the "Offer Price"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on November 16, 2020. The Tender Offer is scheduled to expire at one minute after 11:59 p.m. (12:00 midnight) Eastern Time, on December 14, 2020. The Proposed Transaction is valued at approximately $11.3 billion including the assumption of Dunkin' Brands' debt.

3. On November 16, 2020, Dunkin' Brands filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Dunkin' Brands stockholders tender their shares in favor of the Tender Offer, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA Securities, Inc. ("BofA"); and (ii) potential conflicts of interest faced by Company insiders.. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act.

4. In short, the Proposed Transaction will unlawfully divest Dunkin' Brands' public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange

Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Dunkin' Brands' common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Dunkin' Brands.

9.     Defendant Dunkin' Brands is a Delaware corporation with its principal executive offices located at 130 Royall Street, Canton, Massachusetts 02021. Dunkin' Brands is one of the world's leading franchisors of quick service restaurants ("QSR") serving coffee, baked goods, and

ice cream. Dunkin' Brands' common stock is traded on the Nasdaq Global Select Market under the ticker symbol "DNKN."

10. Defendant Nigel Travis ("Travis") has served as Non-Executive Chairman of the Board since January 1, 2019 and as a director of the Company since 2009. Defendant Travis previously served as Chief Executive Officer ("CEO") of the Company from January 2009 until July 2018, as Chairman of the Board since May 2013 and as Executive Chairman from July 2018 until December 31, 2018.

11. Defendant David Hoffmann ("Hoffmann") has been the Company's CEO and a director of the Company since July 2018. Defendant Hoffmann previously served as the President of Dunkin' Donuts U.S. and Canada beginning in October 2016.

12. Defendant Raul Alvarez ("Alvarez") has been a director of the Company since 2012.

13. Defendant Linda Boff ("Boff") has been a director of the Company since 2017.

14. Defendant Irene Chang Britt ("Britt") has been a director of the Company since 2014.

15. Defendant Anthony DiNovi ("DiNovi") has been a director of the Company since 2006.

16. Defendant Michael Hines ("Hines") has been a director of the Company since 2011.

17. Defendant Mark Nunnelly ("Nunnelly") has been a director of the Company since 2006.

18. Defendant Carl Sparks ("Sparks") has been a director of the Company since 2013.

19. Defendant Roland Smith ("Smith") has been a director of the Company since 2017.

4

20.     Defendants identified in paragraphs 10 to 19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Inspire is a multi-brand restaurant company whose current portfolio includes more than 11,000 Arby's, Buffalo Wild Wings, SONIC Drive-In, Rusty Taco, and Jimmy John's restaurants worldwide.  It was founded in 2018 and is headquartered in Atlanta, Georgia.  Inspire is majority-owned by affiliates of Roark Capital Management, LLC.

22.     Purchaser is a Delaware corporation and a wholly-owned subsidiary of Inspire.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

23.     Dunkin' Brands is one of the leading franchisors of QSRs serving hot and cold coffee and baked goods, as well as hard serve ice cream.  The Company franchises restaurants under its Dunkin' and Baskin-Robbins brands and maintains over 21,000 points of distribution in more than 60 countries worldwide.

24.     Dunkin' Brands reports business in five segments: (i) Dunkin' U.S.; (ii) Dunkin' International; (iii) Baskin-Robbins International; (iv) Baskin-Robbins U.S.; and (v) U.S. Advertising Funds.  In fiscal year 2019, the Dunkin' segments generated revenues of $672.8 million, or 51% of total segment revenues, of which $646.1 million was in the U.S. segment and $26.7 million was in the international segment.  In fiscal year 2019, the Baskin-Robbins segments generated revenues of $160.5 million, of which $112.4 million was in the international segment and $48.1 million was in the U.S. segment.  In fiscal year 2019, the U.S. Advertising Funds segment generated revenues of $473.6 million.  As of December 28, 2019, there were 13,137 Dunkin' points of distribution, of which 9,630 were in the U.S. and 3,507 were international, and 8,160 Baskin-Robbins points of distribution, of which 5,636 were international and 2,524 were in

the U.S.

25. The Company generates revenue from five primary sources: (i) royalty income and franchise fees associated with franchised restaurants; (ii) continuing advertising fees from Dunkin' and Baskin-Robbins franchisees and breakage and other revenue related to the gift card program; (iii) rental income from restaurant properties leased or subleased to franchisees; (iv) sales of ice cream and other products to franchisees in certain international markets; and (v) other income including fees for the licensing of Company brands for products sold in certain retail channels (such as Dunkin' K-Cup pods, retail packaged coffee, and ready-to-drink bottled iced coffee), the licensing of the rights to manufacture Baskin-Robbins ice cream products to a third party for sale to U.S. franchisees, refranchising gains, and online training fees.

26. On October 29, 2020, Dunkin' Brands announced its third quarter 2020 financial results, including: (i) net income of $74.0 million, a $1.6 million improvement over the third quarter of 2019; (ii) revenues of $361.5 million, compared to $355.9 million for the third quarter of 2019; and (iii) diluted adjusted earnings per share ("EPS") of $0.93, compared to $0.90 for the third quarter of 2019. Defendant Hoffmann commented on the Company's third quarter results, stating:

> Our strong third quarter results are a testament to our continued focus on the Dunkin' U.S. Blueprint for Growth and demonstrate that our high-frequency, low-touch, affordable-ticket business performs well in any environment. In response to changing consumer patterns, we moved quickly to adapt our menu, introducing new beverages and snacking items designed to appeal to both morning and afternoon traffic, as well as younger consumers. We also doubled down on digital, leveraging the strength of our assets to give customers an even faster, frictionless experience. All of which contributed to our Dunkin' U.S. comparable store sales growth of 0.9 percent. Among our achievements this quarter, we were most proud of the grit and determination displayed by our franchisees who, throughout the pandemic, kept their restaurants open, their crews employed, and their communities running on Dunkin'.

We delivered solid growth in third quarter revenue, operating income, and earnings per share, as well as positive comparable store sales for both Dunkin' and Baskin-Robbins in the U.S., underscoring the strength of our franchised business model. We are nearly complete with our initiative, as announced last quarter, to work with our franchisees to close low-volume, under-performing locations following our quality-over-quantity development philosophy. For many Dunkin' U.S. franchisees, closing these restaurants will enable them to do greater reinvestment into the brand whether through Next Generation remodels, building new restaurants, or relocating restaurants to higher-traffic areas.

**The Proposed Transaction**

27. On October 30, 2020, Dunkin' Brands and Inspire issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **Atlanta and Canton, MA – October 30, 2020** – Inspire Brands, Inc. ("Inspire") and Dunkin' Brands Group, Inc. ("Dunkin' Brands") (NASDAQ: DNKN), parent company of Dunkin' and Baskin-Robbins, announced today that they have entered into a definitive merger agreement under which Inspire will acquire Dunkin' Brands for $106.50 per share in cash in a transaction valued at approximately $11.3 billion including the assumption of Dunkin' Brands' debt.
>
> Inspire is a multi-brand restaurant company with a current portfolio that includes more than 11,000 Arby's, Buffalo Wild Wings, SONIC Drive-In, and Jimmy John's restaurants worldwide. The company's vision of invigorating great brands and supercharging their long-term growth has made Inspire one of the largest restaurant companies globally, with $15 billion in annual systemwide sales.
>
> Dunkin' is famous for its combination of high-quality coffees, espresso beverages, baked goods, and breakfast sandwiches served all day with fast, friendly service. Baskin-Robbins, the world's largest chain of ice cream specialty shops, is known for its variety of "31 flavors" of ice cream, along with their creative ice cream cakes, milkshakes, and ice cream sundaes. Currently there are more than 12,500 Dunkin' and almost 8,000 Baskin-Robbins restaurants around the world. Following the completion of the transaction, Dunkin' and Baskin-Robbins will be operated as distinct brands within Inspire.
>
> Under the terms of the merger agreement announced today, which has been unanimously approved by the Boards of Directors of Inspire and Dunkin' Brands, Inspire will commence a tender offer to acquire all outstanding shares of Dunkin' Brands for $106.50 per share in cash. This represents a premium of approximately 30% to Dunkin' Brands' 30-day volume-weighted average price and a premium of approximately 20% per share to Dunkin' Brands' closing stock price on October 23, 2020.

"Dunkin' and Baskin-Robbins are category leaders with more than 70 years of rich heritage, and together they are two of the most iconic restaurant brands in the world," said Paul Brown, Co-founder and Chief Executive Officer of Inspire Brands. "By joining Inspire, these brands will add complementary guest experiences and occasions to our current portfolio.

Further, they will strengthen Inspire through their scaled international platform and robust consumer packaged goods licensing infrastructure, as well as add more than 15 million loyalty members. We are excited to welcome Dunkin' and Baskin-Robbins' employees, franchisees, and suppliers to the Inspire family."

"Today's announcement is a testament to our world-class group of franchisees, licensees, employees, and suppliers who have worked together to transform Dunkin' and Baskin-Robbins into modern, relevant brands. This team's grit and determination has enabled us to deliver outsized performance and made our brands among the most elite in the quick service industry. I am particularly proud of our actions since March of this year. During the global pandemic, we have stood tall. We've had each other's backs and are now stronger than ever," said Dave Hoffmann, Chief Executive Officer of Dunkin' Brands. "We are excited to bring meaningful value to shareholders who have been with us on this journey and believe that Inspire Brands, a preeminent operator of franchised restaurant concepts, will continue to drive growth for our franchisees while remaining true to all that is unique and special about the Dunkin' and Baskin-Robbins brands."

**Transaction Details**

The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Dunkin' Brands' outstanding shares, the expiration or termination of the antitrust waiting period, and other customary conditions. Following the successful completion of the tender offer, Inspire will acquire all remaining shares not tendered in the tender offer through a second-step merger at the same price. The transaction is expected to close by the end of 2020.

**Insiders' Interests in the Proposed Transaction**

28. Dunkin' Brands insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Dunkin' Brands.

29. Specifically, Company insiders stand to reap substantial financial benefits for securing the deal with Inspire. The following table summarizes the cash payments the Company's insiders stand to receive in connection with tendering their shares, and the vesting of their Company stock options, restricted stock units ("RSUs"), and restricted stock units subject to performance-based vesting criteria ("PSUs") upon consummation of the Proposed Transaction:

| Name of Executive Officer or Director | Cash Consideration for Shares ($) | Cash Consideration for Stock Options ($) | Cash Consideration for RSUs ($) | Cash Consideration for PSUs ($) | Total Cash Consideration in connection with the Offer and the Merger ($) |
|---|---|---|---|---|---|
| *Directors* | | | | | |
| Raul Alvarez | $ 278,711 | $ — | $ 204,906 | $ — | $ 483,617 |
| Linda Boff | $ 199,368 | $ — | $ 204,906 | $ — | $ 404,274 |
| Irene Chang Britt | $ — | $ — | $ 204,906 | $ — | $ 204,906 |
| Anthony DiNovi | $ 93,507 | $ — | $ 204,906 | $ — | $ 298,413 |
| Michael Hines | $ 1,326,458 | $ — | $ 204,906 | $ — | $ 1,531,364 |
| Mark Nunnelly | $ 358,053 | $ — | $ 204,906 | $ — | $ 562,959 |
| Roland Smith | $ 539,423 | $ — | $ 204,906 | $ — | $ 744,329 |
| Carl Sparks | $ 10,863 | $ — | $ 204,906 | $ — | $ 215,769 |
| Nigel Travis | $ 18,163,682 | $ 35,551,055 | $ 204,906 | $ 2,537,086 | $ 56,456,728 |
| *Executive Officers* | | | | | |
| Philip Auerbach | $ — | $ — | $ 1,496,645 | $ — | $ 1,496,645 |
| David Hoffmann | $ 3,293,300 | $ 25,778,275 | $ 782,456 | $ 4,486,291 | $ 34,340,321 |
| Katherine Jaspon | $ 769,356 | $ 9,389,845 | $ — | $ 1,205,282 | $ 11,364,483 |
| Stephanie Lilak | $ 112,890 | $ 1,218,053 | $ 320,246 | $ 288,828 | $ 1,940,017 |
| Jason Maceda | $ 636,870 | $ 3,996,786 | $ — | $ 513,415 | $ 5,147,072 |
| W. David Mann | $ 144,840 | $ 2,558,982 | $ 419,930 | $ 605,240 | $ 3,728,991 |
| Scott Murphy | $ 1,274,486 | $ 10,448,038 | $ — | $ 1,106,666 | $ 12,829,189 |
| Karen Raskopf | $ — | $ 2,084,646 | $ — | $ 562,256 | $ 2,646,902 |
| John Varughese | $ 283,397 | $ 5,009,010 | $ — | $ 486,364 | $ 5,778,771 |

30. Moreover, if they are terminated in connection with the Proposed Transaction, Dunkin' Brands' named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| David Hoffmann | $ 2,925,000 | $ 20,891,861 | $ 60,751 | $ 23,877,612 |
| Katherine Jaspon | $ 1,125,000 | $ 5,144,382 | $ 20,000 | $ 6,289,382 |
| W. David Mann | $ 997,500 | $ 3,248,947 | $ 50,563 | $ 4,297,010 |
| Scott Murphy | $ 1,650,000 | $ 4,814,033 | $ 59,685 | $ 6,523,718 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

28. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Dunkin' Brands' stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the

9

Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA; and (ii) potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning BofA's Financial Analyses***

30. The Recommendation Statement describes BofA's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of BofA's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Dunkin' Brands' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

31. With respect to BofA's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the terminal year metric BofA applied terminal multiples ranging from 15.0x to 18.0x to, in order to derive the terminal value in the analysis; (ii) quantification of the terminal year metric and terminal value; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 6.3% to 8.1%.

32. With respect to BofA's *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed.

33. With respect to BofA's review of publicly available research analysts' one-year price targets, the Recommendation Statement fails to disclose the individual price targets observed and the sources thereof.

34. With respect to BofA's illustrative analysis of the implied present value of the future value per share of the Shares at the end of 2022, the Recommendation Statement fails to disclose a quantification of the inputs and assumptions underlying the discount rate of 9.0%.

35. The omission of this information renders the statements in the "Company Management's Unaudited Prospective Financial Information" and "Opinion of BofA Securities Inc." sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

36. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

37. The Recommendation Statement sets forth:

> At the first meeting on the morning of October 30, 2020, the Dunkin' Brands Board discussed proposals submitted by Parent to incentivize members of Dunkin' Brands management to remain with Dunkin' Brands' Brands during the twelve months following the closing of the proposed transaction in order to avoid a rapid amortization event under Dunkin' Brands' securitization facility, and the Board authorized Mr. Raul Alvarez, a member of the Dunkin' Brands Board, Mr. DiNovi and Mr. Hoffmann to negotiate on its behalf directly with representatives of Parent in respect of these proposals.

Recommendation Statement at 29. Yet, the Recommendation Statement fails to disclose the details of these proposals.

38. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Dunkin' Brands' stockholders to understand potential conflicts

of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. The omission of this information renders the statements in the "Background of the Offer" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

40. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Dunkin' Brands stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations
of Section 14(d) of the Exchange Act and SEC Rule 14d-9**

31. Plaintiff repeats all previous allegations as if set forth in full.

32. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Dunkin' Brands stockholders to tender their shares in the Tender Offer.

33. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

34. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

35. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

36. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Dunkin' Brands, who will be deprived of their right to make an informed decision whether to tender their shares or seek appraisal if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

37. Plaintiff repeats all previous allegations as if set forth in full.

38. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances

under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

39. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender her shares pursuant to the Tender Offer or seek appraisal.

40. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

## COUNT III

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

41. Plaintiff repeats all previous allegations as if set forth in full.

42. The Individual Defendants acted as controlling persons of Dunkin' Brands within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Dunkin' Brands and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

45. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

46. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Dunkin' Brands, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.	In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 2, 2020

**WEISSLAW LLP**
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*